IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM L. HARRISON,
   *Plaintiff*,

v.

FIREMAN'S FUND INSURANCE
COMPANY,
   *Defendant*.

Civil Action No. ELH-11-1258

**MEMORANDUM OPINION**

William Harrison, plaintiff, was convicted of sexual abuse of S. Doe, a minor, who was then Harrison's thirteen-year-old neighbor. *See State v. Harrison*, No. 12-K-08-000001 (Md. Cir. Ct. Harford Co. Nov. 16, 2009), *aff'd*, 198 Md. App. 236 (2011) (petition for certiorari pending). Harrison is presently serving his sentence for the offense at the Eastern Correctional Institution in Maryland. Following Harrison's criminal conviction, N. Doe and M. Doe, as parents and next friends of S. Doe (collectively, the "Does"), filed a civil suit against Harrison in the Circuit Court for Harford County, Maryland, alleging his liability in tort for the sexual abuse of S. Doe. *See Doe v. Harrison*, No. 12-C-10-000600 (Md. Cir. Ct. Harford Co.). During the pendency of the tort suit, Harrison initiated the present case, seeking a declaratory judgment that his general liability insurer, defendant Fireman's Fund Insurance Company ("Fireman's Fund"), is obligated to provide him with a defense and coverage in the tort suit.[1]

---

[1] Harrison filed the declaratory action in the Circuit Court for Harford County, but Fireman's Fund timely removed the suit to this Court on the basis of diversity of citizenship. Harrison is a Maryland citizen, while Fireman's Fund is a California corporation with its principal place of business in California, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

The Does have filed a "Motion for Leave to Intervene as Plaintiff[s]" in this case. ECF 14. I have considered their memorandum and Fireman's Fund's opposition.[2] No hearing is necessary. *See* Local Rule 105.6. As I shall explain, I will grant the Does' motion to intervene.[3]

**Discussion**

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. The Does assert that they are entitled to intervene as of right under Rule 24(a)(2). Alternatively, they argue that permissive intervention is appropriate under Rule 24(b)(1)(B).

In *Houston General Insurance Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999), the Fourth Circuit explicated the standard for intervention as of right under Rule 24(a)(2):

> Applicants to intervene as of right must meet all four of the following requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

The Does' application was timely, as it was filed less than two months after the case was removed to this Court, and before the filing of pre-discovery dispositive motions. Moreover, Fireman's Fund does not dispute the timeliness of the Does' application. Further, the Does clearly have an interest in this case, as this case will determine whether Fireman's Fund must indemnify Harrison for any judgment the Does obtain against him in the tort suit. Nor does Fireman's Fund contest the Does' interest.

Fireman's Fund vigorously argues, however, that the Does cannot demonstrate that denial of intervention would impair or impede their ability to protect their interests, because they cannot

---

[2] Harrison has not filed a response to the motion, and the time to respond has expired. *See* Local Rule 105.2(a) (D. Md. 2011); Fed. R. Civ. P. 6(d).

[3] I will assume the parties' familiarity with many of the underlying factual allegations.

show that Harrison inadequately represents their interests. I disagree.

In my view, the Fourth Circuit's holding in *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991), compels the conclusion that the Does are entitled to intervene as of right. In *Teague*, an insurance company sought a declaratory judgment that it was not obligated to indemnify its insureds (the televangelist James Bakker and two of his business associates) in connection with fraud claims lodged against the insureds in an underlying tort suit. *Id.* at 259-60. As in this case, the plaintiffs in the tort suit sought to intervene as of right in the declaratory action. However, the district court denied intervention. *Id.*

Concluding that the intervenors had a "'significantly protectable interest'" in the outcome of the litigation, *id.* at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)), the Fourth Circuit reversed. *Id.* at 262. It reasoned that the intervenors stood "to gain or lose by the direct legal operation of the district court's judgment" in the declaratory action "between [the] insurer and its insured," despite the fact that the intervenors' interest was "contingent on the outcome" of the underlying tort suit against the insureds. *Id.* Moreover, the Court determined that the intervenors' ability to protect their interest would be impaired, absent intervention, because if the insurer were to "prevail[] in th[e] declaratory judgment action, the [intervenors] would have to satisfy their judgment from other assets of the insureds and the existence and amount of such assets [were] questionable." *Id.*

Of import here, the Fourth Circuit opined that Bakker and his associates did not adequately represent the intervenors' interests. *Id.* at 262. Notably, the Court faulted the district court for "fail[ing] to heed the Supreme Court's determination that the burden on the applicant of demonstrating a lack of adequate representation 'should be treated as minimal.'" *Id.* (quoting

*Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). In the Fourth Circuit's view, there was a "significant chance" that the insureds might be "less vigorous" than the intervenors in defending the declaratory judgment suit, because it was undisputed that the insureds had "limited financial resources." *Id.* In particular, the Court observed that Bakker was in federal prison due to his criminal convictions for the underlying fraud, and had no income other than his meager prisoner allowance. *Id.*

As I see it, *Teague* controls this case.[4] Plainly, it is of great importance to the tort plaintiffs to persuade this Court that Firearm's Fund is obligated to indemnify Harrison. If this Court ultimately determines that Fireman's Fund is not required to indemnify Harrison, the Does will only be able to satisfy any judgment they obtain against Harrison from his assets, rather than from the resources of his insurer, Fireman's Fund. Moreover, the Does have met their "'minimal'" burden, *id.* at 262 (quoting *Trbovich*), of demonstrating that Harrison is not an adequate representative of their interests. Like Bakker in *Teague*, Harrison is presently

---

[4] To be sure, other circuits confronted with similar facts might not conclude that intervention is mandatory. *See, e.g.*, *Med. Liab. Mut. Ins. Co. v. Alan Curtis, LLC*, 485 F.3d 1006 (8th Cir. 2007) (affirming denial of mandatory intervention to underlying tort plaintiff in declaratory action between insurer and alleged tortfeasor); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) (same). Nevertheless, *Teague* is binding precedent in this circuit. *See Metropolitan Prop. & Cas. Ins. Co. v. McKaughan*, Civ. No. WMN-10-690, 2011 WL 977870, at *3 (D. Md. Mar. 17, 2011) (granting intervention as of right to tort plaintiff in declaratory suit between insurer and alleged tortfeasor, and stating: "[T]his Court is bound by the Fourth Circuit's decision in *Teague*"); *Continental Ins. Co. v. Law Office of Thomas J. Walker, Jr.*, 171 F.R.D. 183, 186 (D. Md. 1997) (same, stating that insurer's argument against intervention "cannot stand in light of the *Teague* precedent").

I also recognize that some courts have attempted to distinguish *Teague* on the basis that, by the time the Fourth Circuit decided the appeal, a judgment had been rendered against Bakker in the underlying tort suit. *Teague*, 931 F.2d at 262 n.4. *See, e.g.*, *Treesdale*, 419 F.3d at 223 (distinguishing *Teague*). However, the *Teague* Court expressly rejected that distinction, stating that intervention could be mandatory "even when the intervenor's interest is contingent on the outcome of other litigation." *Teague*, 931 F.2d at 261; *accord Continental*, 171 F.R.D. at 186.

incarcerated, and is presumably not in a position to generate substantial income from which to satisfy a judgment.[5]  Nor is it clear that Harrison can mount a viable defense, given his current status.  In this regard, it is noteworthy that Harrison has not filed a response to the Does' motion to intervene.  Further, given that the Does and Harrison are adversaries in the tort suit, and Harrison has been convicted of the sexual abuse of their child, it is understandable that the Does believe Harrison is not a fair and adequate representative of their interests.  Indeed, but for the Does' institution of the tort suit, Harrison would not have had to initiate the declaratory action.

According to Wright and Miller, under Rule 24(a)(2), once an intervenor has satisfied the first three criteria for mandatory intervention (*i.e.*, timeliness, an interest in the litigation, and that denial of intervention would impede the intervenor's ability to protect his interests), the burden of persuasion "shift[s]," such that intervention is mandatory "unless the court is persuaded that the representation is in fact adequate."  7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1909, at 390 (3d ed. 2007, 2011 Supp.); *see also* FED. R. CIV. P. 24(a)(2) (requiring intervention where first three criteria are satisfied, "*unless* existing parties adequately represent their interest") (emphasis added).  Fireman's Fund has not advanced any evidence indicating that Harrison is an adequate representative of the Does' interests.

However, Fireman's Fund argues, *contra* Wright and Miller, that the burden is on the *Does* to demonstrate that Harrison *cannot* adequately represent their interests, and that the Does' burden is effectively heightened.  Relying on *Penn-Pacific Life Insurance Co. v. Willian R. Evans, Chartered*, 200 F.R.D. 532 (D. Md. 2001), Fireman's Fund claims that, "when the moving party has the same ultimate objective as a party to the suit, then a presumption arises that

---

[5] His assets are not known to the Court.

the moving party's interests are adequately represented." *Id.* at 537.  To rebut this presumption, Fireman's Fund asserts that the intervenor "'must demonstrate adversity of interest, collusion, or nonfeasance,'" *id.* (citation omitted), and claims that the Does have advanced no such evidence.

In *Penn-Pacific*, and the cases upon which it relies for the "presumption," the intervenor had the same "*ultimate* objective" as a party to the litigation.  *Id.* at 537-38 (emphasis added) (denying mandatory intervention where defendant had "a legal obligation to represent the would-be Intervenor's interest"); *Commonwealth of Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216-17 (4th Cir. 1976) (relied upon by *Penn-Pacific* for "presumption"; holding that presumption applied where would-be intervenor conceded that its interests at trial would be adequately represented by plaintiff); *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973) (relied upon by *Westinghouse*; holding that presumption applied in contract case, where would-be intervenor had security interest in plaintiff's proceeds from the contracts in issue); *see also* 7C WRIGHT, MILLER & KANE, § 1909, at 400-04 (stating that "representation will be presumed adequate unless special circumstances are shown" in "cases in which the interest of the absentee is identical with that of one of the existing parties or one of the existing parties is charged by law with representing the interest of the absentee").  Although both the Does and Harrison have the same objective in this declaratory judgment proceeding, *i.e.*, obtaining a declaration that Fireman's Fund must defend and indemnify Harrison, they are polar opposites with respect to their "*ultimate* objectives" in the tort suit.  *See* 7C WRIGHT, MILLER & KANE, § 1909, at 396-98  (describing cases as "easy to resolve" where "the party who may, in some senses, represent the absentee also is adverse to the absentee," and stating that, in such a case, the "absentee cannot be required to look for adequate representation to an opponent").

In sum, I am satisfied that the Does are entitled to mandatory intervention under Rule 24(a)(2). Alternatively, even if Rule 24(a)(2) does not mandate intervention, I would exercise my discretion to grant permissive intervention under Rule 24(b). *See Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (stating that determination of a motion for "permissive intervention under Rule 24(b) 'lies within the sound discretion of the trial court'") (citation omitted). In so ruling, I am mindful that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (citation omitted).

In *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D. Md. 2004), then-District Judge Andre Davis distilled, from "the text of Rule 24(b) itself [and] case law interpreting the rule," four preconditions for permissive intervention, *id.* (citations omitted):

> (1) that [the intervenor's] motion is "timely"; (2) that its "claim or defense and the main action have a question of law or fact in common" . . . ; (3) that there exists an independent ground of subject matter jurisdiction; and, (4) that "intervention will [not] unduly delay or prejudice the adjudication of the rights of the original parties."

Of those preconditions, Fireman's Fund argues only that the fourth one is not satisfied. It contends that it will be "unduly prejudiced" if the Does are permitted to intervene. In support of its position, Fireman's Fund merely argues that it will be required to "incur duplicative and superfluous costs" by responding to briefing from both Harrison and the Does on the issue of insurance coverage. The bare requirement to respond to legal argument from one additional party does not amount to undue prejudice. In any event, concurrent with this opinion, I shall issue a revised briefing schedule for pre-discovery dispositive motions, which will streamline the briefing, thereby minimizing any additional burden on Fireman's Fund.

Accordingly, the Does' "Motion for Leave to Intervene as Plaintiff[s]" (ECF 14) will be granted.[6]  An Order implementing the foregoing rulings follows.

Dated: July 28, 2011  /s/
Ellen Lipton Hollander
United States District Judge

---

[6] A court presiding over a diversity action with more than two parties must "'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *U.S. Fidelity & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995) (citation omitted).  I am satisfied that the Court retains diversity jurisdiction, despite the intervention of the Does.

Although the Does do not allege their state of citizenship in their motion to intervene, it appears from the record that the Does, who are Harrison's neighbors, are also citizens of Maryland.  If either Harrison or the Does were properly aligned with Fireman's Fund, rather than each other, Maryland citizens would be on both sides of the dispute and diversity would be destroyed.  *See, e.g.*, *Fireman's Fund Ins. Co. v. Dunlap*, 317 F.2d 443 (4th Cir. 1963) (holding that diversity was defeated in insurance company's declaratory action regarding underlying motor tort suit, where, although insured was a nominal defendant, both insurance company and insured sought a determination that driver of vehicle, who was non-diverse from insured, was driving vehicle without insured's consent).  However, the Does and Harrison are both properly aligned as plaintiffs here.  To align parties for diversity purposes, courts in the Fourth Circuit "apply the 'principal purpose' test: First, we determine the primary issue in controversy, and then we align the parties according to their positions with respect to the primary issue," which "'is to be determined by plaintiff's principal purpose for filing its suit.'" *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (citations omitted).

Notably, the "principal purpose" test focuses on the parties' interests in the lawsuit at hand.  This is unlike the inquiry for intervention under Rule 24(a)(2), which looks to whether the parties' *ultimate* objectives are aligned in order to determine whether a party adequately represents the interests of a would-be intervenor.  Harrison's principal purpose in initiating this declaratory suit is to obtain a declaration that Fireman's Fund is obligated to defend and indemnify Harrison in the tort suit.  Because the Does agree with Harrison as to the obligations of Fireman's Fund, they are both properly considered plaintiffs in this suit, and diversity of citizenship remains intact.  However, the parties' ultimate objectives pertain to the state tort suit.