IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM L. HARRISON,

  *Plaintiff*,

    and

N. DOE, *et al.*,

  *Intervenor Plaintiffs*,

  v.

FIREMAN'S FUND INSURANCE
COMPANY,

  *Defendant*.

Civil Action No. ELH-11-1258

## MEMORANDUM OPINION

William L. Harrison, plaintiff, seeks a declaratory judgment pronouncing that Fireman's Fund Insurance Company ("Fireman's Fund" or "Insurer"), defendant, is obligated, under the terms of the general liability insurance policy (the "Policy") that it issued to Harrison, to defend and indemnify Harrison with respect to a tort suit pending against him in the Circuit Court for Harford County, Maryland.  *See Doe v. Harrison*, No. 12-C-10-000600 (Md. Cir. Ct. Harford Co.) (the "Tort Suit").  The Tort Suit was filed by N. Doe and M. Doe, as parents and next friends of S. Doe (collectively, the "Does"), against Harrison to recover damages in connection with Harrison's sexual molestation of their son, S. Doe, who was Harrison's thirteen-year-old neighbor at the time of the alleged abuse.

Following a criminal trial in the Circuit Court for Harford County, Maryland, Harrison was convicted of the sexual child abuse of S. Doe, based on the same conduct at issue here, and is presently incarcerated.  *See State v. Harrison*, No. 12-K-08-000001 (Md. Cir. Ct. Harford Co.

Nov. 16, 2009), *aff'd*, 198 Md. App. 236, 17 A.3d 144, *cert. denied*, 421 Md. 193, 25 A.3d 1026

(2011).  *See* note 8, *infra*.   Because Fireman's Fund refused to defend or indemnify Harrison

with respect to the Tort Suit, Harrison initiated the instant case in the Circuit Court for Harford

County.  *See* Complaint ¶ 7.  Fireman's Fund timely removed the matter to this Court on the

basis of diversity jurisdiction.[1]  *See* Notice of Removal (ECF 1).  Thereafter, the Court granted

the Does' motion to intervene as plaintiffs.  *See* ECF 14, 20, 21.[2]

Now pending before the Court are a motion for summary judgment filed by Fireman's

Fund ("Insurer's Motion") (ECF 15) and a cross-motion to dismiss or for summary judgment

filed by the Does ("Does' Motion") (ECF 25).  Although Harrison is represented by counsel, he

has not participated in the briefing of the motions.  No hearing is necessary to resolve them.[3]  *See*

Local Rule 105.6.  For the reasons that follow, I will grant the Insurer's Motion, deny the Does'

Motion, and issue a declaratory judgment in favor of Fireman's Fund.

### Factual and Procedural Background

Under Maryland law, in a declaratory judgment action regarding an insurer's duty to

defend, the principally relevant facts are the provisions of the insurance policy and the

---

[1] Harrison is a Maryland citizen, Fireman's Fund is a California corporation with its principal place of business in California, and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a), (c)(1).

[2] The Does, like Harrison, apparently are Maryland citizens.  As the Court explained in granting the motion to intervene, *see* ECF 20 at 8 n.6, the Does' intervention does not destroy diversity, because they are properly aligned as plaintiffs in this case under the "principal purpose" test.  *See Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008).

[3] In addition to the two cross-motions and their supporting memoranda, I have considered Fireman's Fund's combined opposition to the Does' Motion and reply in support of its own motion ("Reply") (ECF 28).

allegations of the underlying lawsuit, for which the insured seeks coverage and a defense.[4]

Ordinarily, other facts are relevant, if at all, only for purposes of clarifying the meaning of the

policy or establishing a basis for coverage that is not apparent from the factual allegations in the

underlying complaint. *See, e.g.*, *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 458-

60, 889 A.2d 387, 393-94 (2006) (stating that, in interpreting an insurance policy, Maryland law

permits consideration of evidence showing the parties' intent to use policy terms in a special or

technical sense; the circumstances of the parties at the time the policy was issued; and extrinsic

evidence that may resolve ambiguities, if any, in the terms of the policy); *Aetna Cas. & Sur. Co.*

*v. Cochran*, 337 Md. 98, 105-11, 651 A.2d 859, 863-66 (1995) (holding that an insured may

present evidence beyond the underlying complaint to establish a potentiality of coverage).

Here, both sides have moved for summary judgment.  In considering a motion for

summary judgment, a court must view the facts in the light most favorable to the non-moving

---

[4] Here, both sides rely exclusively upon Maryland substantive law.  I agree that Maryland
substantive law governs.

In exercising diversity jurisdiction, a federal court "must apply the substantive law of the
forum state including its choice of law rules."  *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507
F.3d 270, 275 (4th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97
(1941), and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)).  Maryland is the forum state.
When an insurance policy, such as the Policy at issue, contains no choice of law provision,
Maryland applies the doctrine of *lex loci contractus*, under which "'the law of the jurisdiction
where the contract was made controls its validity and construction.'"  *U.S. Life Ins. Co. v.
Wilson*, 198 Md. App. 452, 463, 18 A.3d 110, 116 (2011).  Moreover, the "'*locus contractu* of an
insurance policy is the state in which the policy is delivered and the premiums are paid.'"  *Id.*
(citation omitted).  In this case, that state is Maryland, the location of Harrison's residence, to
which the Policy was delivered.  *See* Policy at 8.  *See also Volt Info. Sci., Inc. v. Bd. of Trustees
of Leland Stanford Univ.*, 489 U.S. 468, 474 (1989) ("interpretation of private contracts is
ordinarily a question of state law"); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-
22 (4th Cir. 2004); *see also French v. Assurance Co.*, 448 F.3d 693, 700 (4th Cir. 2006) (stating,
in diversity declaratory action regarding coverage under insurance policy issued to Maryland
policyholder, "we apply . . . Maryland's substantive law regarding the interpretation of an
insurance policy").

party.  *See, e.g.*, *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

In this background section, I will set forth only the relevant terms of the Policy, which are

undisputed, and the allegations of the complaint in the Tort Suit.  I will elucidate other relevant

facts, including any factual disputes, in the discussion of the issues.

<u>A.  The Policy</u>

The Policy is a "Prestige Home Premier" policy issued by Fireman's Fund, for which

Harrison is the "Named Insured."  *See* Policy at 7, Ex.5 to Insurer's Motion (ECF 15-6).[5]  The

Policy's "Personal Homeowner Policy Declarations" delineate a variety of insurance coverages,

including "Personal Liability" coverage of the insured, up to a limit of $300,000 per occurrence.

*Id.* at 7.   In addition, the Policy includes a "Prestige Excess Liability Declaration," which

provides for an additional $1 million of liability coverage under certain circumstances.  *Id.* at 58;

*see also id.* at 62-72 (conditions of excess liability coverage).

In relevant part, the Policy establishes the Insurer's obligation to defend and indemnify

the insured if "a claim is made or a suit is brought against an insured, anywhere in the world, for

damages because of a bodily injury . . . caused by an occurrence."  *Id.* at 40 (emphasis omitted).

"Occurrence" is a defined term in the Policy,[6] which means "[*a*]*ccidental* loss of or damage to,

including continuous or repeated exposure to the same or similar harmful conditions, which

results, during the policy period, in bodily injury or property damage[.]"  *Id.* at 28 (emphasis

---

[5] The version of the Policy that has been placed in the record is a renewal of the Policy, with effective dates from December 22, 2009, until December 22, 2010.  *See* Policy at 2-3, 6-8. Although the alleged sexual abuse occurred in 2006 and 2007, no party contends that the Policy was not in effect at the time of the alleged abuse, or that the relevant terms of the version of the Policy then in effect differ materially from the Policy contained in the record.

[6] "Insured" and "bodily injury" are also defined terms in the Policy.  However, their definitions are not at issue because no party disputes that the Tort Suit alleges "bodily injury" to S. Doe or that it was filed against an "insured," within the meaning of the Policy.

added and omitted).  If a claim for damages because of bodily injury "caused by an occurrence" is made against the insured, the Policy obligates the Insurer to do the following, *inter alia*, *id.* at 40 (emphasis omitted):

1. Pay on behalf of the insured up to the limit of insurance shown on the Declarations for damages for which the insured is legally liable.  Damages include prejudgment interest awarded against the insured; and,

2. Provide a defense at [the Insurer's] expense by counsel of [the Insurer's] choice, even if the suit is groundless, false or fraudulent.  [The Insurer] may investigate and settle any claim or suit that [the Insurer] decide[s] is appropriate.  [The Insurer's] duty to settle or defend ends when the amount [the Insurer] pay[s] for damages resulting from the occurrence equals [the Insurer's] limit of insurance.

The Policy also contains several exclusions from coverage, two of which are at issue.[7]

The Policy states, *id.* at 42 (emphasis omitted):

A. Personal Liability . . . Coverage[] do[es] not apply to damages resulting from bodily injury . . . arising out of:

1. [The "Intentional or Criminal Acts Exclusion":] any criminal, willful, malicious or other act or omission that is reasonably expected or intended by any insured to cause damage.  These acts are not covered even if the damage is of a different kind or degree, or is sustained by a different person, than expected or intended.  We do provide coverage if the act arose from the use of reasonable force to protect people or property;

* * *

4. [The "Sexual Molestation Exclusion":] sexual molestation, sexual harassment, corporal punishment, or physical or mental abuse by any insured[.]

---

[7] As noted, the "Prestige Excess Liability Declaration" provides for excess liability coverage under certain circumstances, including when the "required underlying insurance" (*i.e.*, the basic $300,000-per-occurrence liability coverage) "does not apply to the particular occurrence."  Policy at 66.  The excess coverage terms include exclusions that are substantially identical to the two exclusions discussed here.  *See id.* at 69-71.

B.  The Tort Suit

The Tort Suit was filed on or about February 23, 2010.  *See* Complaint ("Tort Complaint"), Ex.2 to Insurer's Motion (ECF 15-3).  As noted, it was filed against Harrison by the Does, as parents and next friends of S. Doe.

The first numbered paragraph of the Tort Complaint states: "This is a case involving the sexual molestation of a minor."  Tort Complaint ¶ 1.  The Tort Complaint alleges that, in or about June 2006, "S. Doe, then thirteen years old, began working for . . . Harrison, performing yard work and other manual labor," *id.* ¶ 4, and "shortly" thereafter, Harrison "engaged in inappropriate sexual behavior with S. Doe by putting his hands down . . . S. Doe's pants and touching his penis." *Id.* ¶ 6.  According to the Tort Complaint, Harrison's "inappropriate sexual behavior continued for a period of months until August 2007, when S. Doe revealed [Harrison's] conduct to his parents and ultimately the police."  *Id.* ¶ 7.  The Tort Complaint recounts that Harrison "was charged and found guilty of sexually molesting a minor in [the Circuit Court for Harford County] and was sentenced to five years confinement in the Division of Correction." *Id.* ¶ 8.[8]  The Tort Complaint also alleges that Harrison "had a duty to act reasonably not to molest

---

[8] In particular, Harrison was convicted by a jury of a single count of "sexual abuse of a minor" under Md. Code (2002, 2007 Supp.), § 3-602 of the Criminal Law Article ("C.L.").  As noted, Harrison's criminal conviction was subsequently affirmed on appeal.  *See Harrison v. State*, 198 Md. App. 236, 17 A.3d 144, *cert. denied*, 421 Md. 193, 25 A.3d 1026 (2011).  *See also* Docket Sheet at 3, Ex.3 to Insurer's Motion (ECF 15-4).  C.L. § 3-602 prohibits a "household member," "family member," or "parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor" from causing "sexual abuse" to the minor.  C.L. § 3-602(b).  The statute defines "sexual abuse" as an "act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not," and includes "incest," "rape," "sexual offense in any degree," "sodomy," and "unnatural or perverted sexual practices."  C.L. § 3-602(a)(4).

On appeal, Harrison did not dispute that he had touched the front of S. Doe's pants. Rather, he argued that the evidence was insufficient to support the required element that he had

or otherwise engage in inappropriate sexual contact with S. Doe." *Id.* ¶ 5.

The Tort Complaint contains five counts. The first count, alleging negligence, incorporates the paragraphs discussed above. In particular, the Does aver that "Harrison failed to act as a reasonable person in that he negligently touched the penis of S. Doe, a minor child, in an inappropriate manner," and that as "a result of [Harrison's] negligence, S. Doe suffered severe emotional injuries and damages." *Id.* ¶¶ 10-11. Count Two alleges assault, Count Three alleges battery, Count Four alleges intentional infliction of emotional distress, and Count Five presents a claim for repayment of medical expenses. *See id.* ¶¶ 12-24. The parties agree that Counts Two, Three, and Four of the Tort Complaint allege intentional torts that are outside the scope of coverage under the Policy.[9] Their dispute centers on Count One.

Additional facts will be presented in the discussion.

## Discussion

In the federal courts, declaratory judgments are authorized by the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides (with exceptions not relevant here) that, in

---

"care or custody or responsibility for the supervision" of S. Doe. He also argued that he was prejudiced by the trial court's refusal to instruct the jury as to the elements of the lesser-included offense of "sexual offense in the third degree," which prohibits, *inter alia*, a person who is more than four years older than the victim from engaging in sexual contact with a minor under the age of fourteen. C.L. § 3-307(a)(3). Notably, Harrison originally had been charged with 216 counts of third-degree sexual offense, in addition to the single count of sexual child abuse for which he was ultimately convicted, but had consented to the prosecutor's decision to drop the charges for the lesser-included offenses before trial. *See Harrison*, 198 Md. App. at 237-40, 17 A.3d at 145-46. The Maryland Court of Special Appeals rejected both of Harrison's contentions. *See id.* at 242-54, 17 A.3d at 147-54.

The facts set forth in this footnote were not alleged in the Does' Tort Complaint; I have included them for the sake of completeness. Nevertheless, these facts are not germane to my resolution of the issues.

[9] Count Five does not state a separate cause of action, but is merely a remedial request.

"a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." Because the parties' rights and obligations in this case arise under the Policy, resolution of their dispute turns on interpretation of the Policy. As noted, both sides agree that the Policy must be interpreted under Maryland law.

Maryland law is well settled that "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001); *see State Farm Mut. Ins. Co. v. DeHaan*, 393 Md. 163, 193, 900 A.2d 208, 225-26 (2006); *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533, 537 (2000). Accordingly, "'ordinary principles of contract interpretation apply.'" *Megonnell v. United Servs. Automobile Ass'n*, 368 Md. 633, 655, 796 A.2d 758, 772 (2002) (citation omitted); *see Dutta v. State Farm Ins. Co.,* 363 Md. 540, 556, 769 A.2d 948, 957 (2001).

In "'deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself.'" *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137, 761 A.2d 997, 1005 (2000) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779, 625 A.2d 1021 (1993)). However, the court bears responsibility for ascertaining the scope and limitations of an insurance policy. *See Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001); *Lloyd E. Mitchell, Inc. v. Maryland Casualty Co., Inc.*, 324 Md. 44, 56, 595 A.2d 469, 475 (1991).

The Maryland Court of Appeals has explained that judicial "interpretation of insurance contracts to determine the scope and limitations of the insurance coverage, like any other

contract, begins with the language employed by the parties." *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995, 1005 (2003).  Generally, Maryland courts "analyze the plain language of [an insurance] contract according to the words and phrases in their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Universal Underwriters Ins. Co.*, 135 Md. App. at 137, 761 A.2d at 1005; *see Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14-15, 852 A.2d 98, 106 (2004); *Litz v. State Farm*, 346 Md. 217, 224, 695 A.2d 566, 569 (1997).  However, if there is evidence that the parties intended to ascribe a special or technical meaning to certain words used in an insurance contract, those words are construed in accordance with that understanding.  *Valliere v. Allstate Insurance Co.*, 324 Md. 139, 142, 596 A.2d 636, 638 (1991)  ("When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls."); *see also Walk*, 382 Md. at 14-15, 852 A.2d at 106; *Dutta*, 363 Md. at 556, 769 A.2d at 957.  Moreover, the insurance policy "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined."  *United Services Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819, 833 (2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779, 784 (1995)); *accord Clendenin Bros.*, *supra*, 390 Md. at 459, 889 A.2d at 392; *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985).

If the court deems the provisions of an insurance policy unambiguous, the meaning of the terms is determined by the court as a matter of law.  *Cole*, 359 Md. at 305, 753 A.2d at 537.  In that circumstance, "'a court has no alternative but to enforce those terms.'"  *Megonnell*, 368 Md. at 655, 796 A.2d at 772 (quoting *Dutta,* 363 Md. at 557, 556 A.2d at 1138).  But, if a contractual

term is ambiguous, the court may consult "extrinsic sources" to ascertain the meaning. *Cole,* 359 Md. at 305, 753 A.2d at 537. A policy term is considered "ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Id.* at 306, 753 A.2d at 537. The treatise, G.J. Couch, 2 COUCH CYCLOPEDIA OF INSURANCE LAW (2d ed. 1959), on which the Maryland appellate courts have relied, states: "The criterion is ambiguity from the standpoint of a layman, not from that of a lawyer." *Id.*, § 15:84, at 416-418.

"'Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer.'" *Megonnell*, 368 Md. at 655, 796 A.2d at 771 (citation omitted); *see Bushey v. Nothern Assurance Co. of America*, 362 Md. 626, 632, 766 A.2d 598, 601 (2001); *Collier v. MD-Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992). But, "if ambiguity is determined to remain after consideration of extrinsic evidence, 'it will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists." *Clendenin Bros.*, 390 Md. at 459-60, 889 A.2d at 394. *See Callaway*, 375 Md. at 280, 825 A.2d 995, 1005-06 ("[W]hen a term in an insurance policy is found to be ambiguous, the court will construe that term against the drafter of the contract which is usually the insurer.").

Of import here, an insurer's "duty to defend is distinct conceptually from its duty to indemnify, *i.e.*, its obligation to pay a judgment." *Walk*, 382 Md. at 15, 852 A.2d at 106. Indeed, "the duty to defend is broader than the duty to indemnify." *Id.* This is because an "insurance company has a duty to defend its insured for all claims that are potentially covered under the policy." *Id.* Moreover, "if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims" against the insured in the underlying suit,

"'notwithstanding alternative allegations outside the policy's coverage, until such times . . . that the claims have been limited to ones outside the policy coverage.'"  *Utica Mut. Ins. Co. v. Miller*, 130 Md. App. 373, 383, 746 A.2d 935, 940 (citations and some internal quotation marks omitted), *cert. denied*, 359 Md. 31, 753 A.2d 3 (2000).

Indeed, "[i]f there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured."  *Walk*, 382 Md. at 16, 852 A.2d at 106-07.  Therefore, the insurer is obligated to defend an insured if "the underlying tort suit . . . *allege*[*s*] action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643, 679 A.2d 540, 544 (1996) (emphasis in original).  Relying on the seminal Maryland case of *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407-08, 347 A.2d 842, 850 (1975), the Maryland Court of Appeals reaffirmed in *Aetna Casualty & Surety Co. v. Cochran*, *supra*, 337 Md. at 102-03, 651 A.2d at 861 (citation omitted):

> [A]n insurance company has a duty to defend its insured for all claims which are potentially covered under an insurance policy.  In *Brohawn* we stated:
>
>> The obligation of an insurer to defend its insured under a contract provision . . . is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.

In the context of an insurer's duty to defend its insured in a tort case, the Maryland Court of Appeals articulated a two-part test in *St. Paul Fire & Marine Ins. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282, 285 (1981):

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements

> of the insurance policy? (2) do the allegations in the tort action potentially bring
> the tort claim within the policy's coverage? The first question focuses upon the
> language and requirements of the policy, and the second question focuses upon
> the allegations of the tort suit.

*See also Moscarillo v. Professional Risk Management Services, Inc.*, 398 Md. 529, 538, 921

A.2d 245, 250 (2007); *Walk*, 382 Md. at 15, 852 A.2d at 106; *Cochran*, 337 Md. at 103-04, 651

A.2d at 862.

When the complaint in the underlying action "neither conclusively establishes nor

negates a potentiality of coverage," an insured is entitled to rely on extrinsic evidence to

establish a potentiality of coverage.  *Cochran*, 337 Md. at 108, 651 A.2d at 864; *see Moscarillo*,

398 Md. at 541, 921 A.2d at 252 ("[T]o establish a potentiality of coverage, an insured can also

refer to extrinsic evidence."); *Walk*, 382 Md. at 16, 852 A.2d at 106-07.  Otherwise, the insured

would be "completely at the mercy of the tort plaintiff's pleadings to establish a potentiality of

coverage."  *Litz*, *supra*, 346 Md. at 226, 695 A.2d at 570.  Nevertheless, "'[o]nly if an insured

demonstrates that there is a reasonable potential that the issue triggering coverage will be

generated at trial can evidence to support the insured's assertion be used to establish a

potentiality of coverage under an insurance policy.'"  *Moscarillo*, 398 Md. at 541, 921 A.2d at

252 (quoting *Cochran*, 337 Md. at 112, 651 A.2d at 866).  The *Walk* Court reiterated that

"'extrinsic evidence must . . . relate in some manner to a cause of action *actually alleged* in the

complaint and cannot be used by the insured to create a new, unasserted claim that would create

a duty to defend.'"  382 Md. at 21, 852 A.2d at 110 (quoting *Reames v. State Farm Fire and*

*Casualty Insurance*, 111 Md. App. 546, 561, 683 A.2d 179, 186 (1996)) (emphasis in *Walk*).

Thus, in a dispute concerning the duty to defend, there are two ways in which extrinsic

evidence may be relevant.  First, extrinsic evidence may be relevant to resolve an ambiguity in

the language of the insurance policy regarding what types of claims are within the scope of coverage.  Second, extrinsic evidence may be offered by the insured (but not by the insurer, *see, e.g.*, *Cochran*, 337 Md. at 107, 651 A.2d at 863) to demonstrate that the claims alleged in the complaint against the insured in the underlying lawsuit come within the coverage of the policy.

At the outset, an insured's criminal conviction is not necessarily dispositive of the question of the insurer's duty to defend or indemnify in a related civil case.  The Maryland Court of Appeals has held that an insured's guilty plea to criminal charges arising out of the same conduct that is at issue in a subsequent civil suit against the insured "may be introduced in [the] subsequent civil proceeding as an admission," but "does not conclusively establish liability.  Instead, it may be rebutted or explained in the subsequent civil case in which it is admitted." *Brohawn*, 276 Md. at 403, 347 A.2d at 848.  Accordingly, the *Brohawn* Court stated: "While [the insurer] may believe that the evidence of the guilty plea would establish that any injuries sustained" by the tort plaintiffs were outside the scope of policy coverage, "this belief will not relieve [the insurer] of its duty to defend its insured in suits which allege a[] . . tort covered by the policy." *Id.* at 408, 347 A.2d at 850.  *Accord Aetna Cas. & Sur. Co. v. Cochran*, *supra*, 337 Md. at 103, 651 A.2d at 861-62 (stating that an insurer cannot "obtain a declaratory judgment that it [does] not have a duty to defend based on the evidence of [a] guilty plea").  *But see Eagan v. Calhoun*, 347 Md. 72, 86-87, 698 A.2d 1097, 1104-05 (1997) (concluding, outside of the duty-to-defend context, that a party's assertion that he committed voluntary manslaughter, contained in submissions filed in the civil case, judicially estopped him from claiming that the killing was unintentional).[10]

---

[10] Notably, *Brohawn*, *Cochran*, and *Eagan* did not concern sexual molestation.

Fireman's Fund contends that, despite the Does' attempt in Count I of the Tort Complaint to frame the claim as one sounding in "negligence," the allegations of sexual molestation describe conduct that is patently intentional and/or criminal, and thus excluded from coverage under the Intentional or Criminal Acts Exclusion of the Policy.  Specifically, the Insurer argues that Maryland appellate courts have held that sexual molestation constitutes intentional conduct as a matter of law.   Therefore, despite the characterization of "negligence," Fireman's Fund reasons that Count I of the Tort Complaint alleges an intentional tort that is excluded from coverage, both because of the  Intentional or Criminal Acts Exclusion, and because the Policy only insures against "[*a*]*ccidental* loss . . . or damage."   Policy at 28 (emphasis added).   The Insurer also argues that Count I of the Tort Complaint alleges a criminal act, and therefore coverage is precluded under that same exclusion.   Finally, Fireman's Fund contends that the allegations are excluded from coverage by the Sexual Molestation Exclusion.

In contrast, the Does insist that there is a potentiality of coverage for the negligence claim, because "a civil jury in the Harford County suit could easily determine that Mr. Harrison's action in placing his hands on top of S. Doe's pants [was] accidental and not intentional."  Does' Motion at 5.   Their contention is based upon Harrison's testimony regarding the underlying conduct, given in the criminal case and at a deposition conducted in the Tort Suit.   At his criminal trial, Harrison testified as follows, ECF 25-2:

Q       Was there in fact inappropriate sexual contact between you and [S. Doe]?

A       Yes, there was.

Q       When did that happen?

A       It was one of the last days he worked.  I don't know the exact date but we were up in the game room, probably played some pool and then wrestled around a little bit.  I tickled him and when I put my arms around him as I was tickling him from behind I just stopped and he put his hands on my arms and *I slid my hands*

*down to the front of his pants and touched him there for maybe three to five seconds. And I just said what am I doing and I pushed away and said it's time to go home.*

Q        You know by making that statement that you're admitting to this jury that you committed a sexual offense in this state, is that correct?

A        Yes, sir, I do.

Q        Do you have any explanation as to why that took place?

A        I thought about this every day since it happened, multiple times, and *I honestly don't have a reason why*. I was under a lot of stress, but I am not making excuses. *I don't know.* It was a very brief encounter. (Emphasis added.)

In a deposition conducted in the Tort Suit, Harrison testified as follows, ECF 25-3, at 57-

58:

Q        Do you remember that you put your hands down the front of [S. Doe's] pants?

A        Yes.

Q        And do you remember when that was?

A        That was the end of July.

Q        Of what?

A        Of '07.

Q        And tell me the circumstances of how that occurred.

A        We were upstairs in the playroom, and I believe we stopped and played some pool, which we did some times when we were finished work, billiards. And then I tickled him, because I tickle everybody, and because he was very ticklish. And I was behind him, and I tickled him. And then I stopped, and my arms were around him. And he put his arms on my arms, and my hand went down to the front of his pants for three to five seconds. And then I pushed away and said time to go.

Q        Tell me why you did that.

A        Why I did what?

Q        Why you put your hands down his pants.

A        *I don't know. I wish I knew the answer to that question.* I would—I don't want—I'm not blaming [S. Doe], but I would say he—he was pushing, *and it's just one of those things that happened.*

Q      *Are you saying that you were kind of like wrestling and somehow your hand got down—*

A      *No.*

Q      *—his pants?*

A      *No.*  We stopped, and I had my arms around him.  And I was just—had my arms like a wrestling hold.  Then I stopped tickling and wrestling.  *He just put his arms on me, leaned back against me, and arms went down.*  Not the inside of his pants, the outside of his pants.  (Emphasis added.)

At the deposition, Harrison vehemently denied that he had put his hands inside S. Doe's pants on any occasion.  *See id.* at 58-65.  The following colloquy is pertinent, *id.* at 58:

Q      Not the inside of his pants?

A      Never.

Q      You never put your hands down the inside of his pants?

A      No.

According to the Does' construction of the testimony quoted above, "Mr. Harrison has testified that his conduct was negligent: he has essentially stated that he accidentally placed his hands on top of S. Doe's pants and never engaged in any other sort of behavior that could be characterized as intentional."  Does' Motion at 9.  Relying on the "potentiality" rule that applies in Maryland, they argue that an insurer must defend an insured if there is any possibility that the policy covers the allegations in a suit against an insured.  Therefore, according to the Does, "no matter how 'attenuated, frivolous, or illogical' this Court believes the negligence count to be, because it is possible that the jury in the Harford County suit would find Mr. Harrison liable for negligence, Fireman's Fund is obligated" to defend Harrison.  Does' Motion at 8-9 (quoting *Sheets*, *supra*, 342 Md. at 643, 679 A.2d at 544).

The Does also urge the Court to "dismiss" this case, because in their view it falls within the so-called "*Brohawn* rule," articulated by the Maryland Court of Appeals in *Brohawn v.*

- 16 -

*Transamerica Ins. Co.*, *supra*, 276 Md. 396, 347 A.2d 842.  In *Brohawn*, the court articulated a general rule against issuing a declaratory judgment regarding insurance coverage when the question on which coverage turns will be decided by the fact finder in the underlying suit against the insured.[11]  *See id.* at 405, 347 A.2d at 849.  Coverage in *Brohawn* turned on whether the insured's conduct was intentional or negligent.

In that case, the insured was the defendant in an underlying civil suit alleging assault and negligence, arising from an altercation when the insured removed her elderly mother from a nursing home.  *See id.* at 398-99, 347 A.2d at 844-46.  The *Brohawn* Court stated, *id.* at 406-07, 347 A.2d at 849:

> Allowing [the insurer] to litigate the question of whether any injuries were intentionally inflicted would permit it, and not . . . the plaintiffs in the tort suits, to control the litigation. [The insurer] would assume the burden of establishing not only that [the tort plaintiffs] were in fact injured but also that they were injured intentionally, exposing its insured . . . to potential punitive damages.  And [the insured] would be forced not only to defend against the allegations of [the tort plaintiffs], but also against the vast resources and expertise of her insurer who would be trying to prove that which was its contractual duty to disprove.

Fireman's Fund maintains that this case is not subject to the *Brohawn* rule because the Maryland appellate courts have made exceptions "in the context of cases involving sexual molestation."  Reply at 13.  The Insurer points to *Harpy v. Nationwide Mutual Insurance Co.*, 76 Md. App. 474, 545 A.2d 718 (1988), and *Pettit v. Erie Insurance Exchange*, 349 Md. 777, 709 A.2d 1287 (1998), in which the Maryland courts held that, as a matter of law, sexual molestation cannot constitute negligence so as to create a potentiality of insurance coverage.

---

[11]  In asking the Court to dismiss this case, the Does mistakenly assert that Fireman's Fund initiated the lawsuit *sub judice*.  As Fireman's Fund points out, see Reply at 1 n.1, 3 n.4, the Insurer is the *defendant* in this case; Harrison filed suit after Fireman's Fund denied his request for a defense and coverage in the Tort Suit, and the Does have intervened as plaintiffs.

In *Harpy*, the insurer sought a declaratory judgment that it was not obligated to defend its insured in a civil suit involving claims of assault and battery, intentional infliction of emotional distress, and negligence.  The claims arose from allegations that, during a period when the insured's daughter "was between 9 and 13 years old," the insured "sexually abused her in various ways, including sexual intercourse."  *Harpy*, 76 Md. App. at 475, 545 A.2d at 719.  The insurer relied on a policy exclusion for personal liability as to bodily injury "'which is expected or intended by the insured.'"  *Id.* at 477, 545 A.2d at 720 (quoting policy).  After the trial court issued a declaratory judgment in favor of the insurer, the insured appealed.  He argued that the policy exclusion did not remove the underlying allegations from the scope of coverage, because he had not intended to cause his daughter to "'suffer the type of injuries that she has alleged.'"  *Id.* (quoting insured's affidavit) (emphasis omitted).

The Maryland Court of Special Appeals characterized the insured's position as "absurd."  *Id.* at 482, 545 A.2d at 722.  The court acknowledged that "an intended act causing unintentional injury, under some circumstances, can be considered negligence."  *Id.* at 484, 545 A.2d at 723.  Nevertheless, it reasoned that there is a "substantial certainty that sexual molestation of a child by her father over an extended period of time will cause that child to suffer serious harm."  *Id.* at 483, 545 A.2d at 723.  In the *Harpy* Court's view, the case was not subject to the *Brohawn* rule because, notwithstanding the allegations of "negligence," there was "no factual issue to be determined in the tort case which would affect the question of coverage."  *Id.* at 482, 545 A.2d at 722.  Adopting the trial court's view, the court reasoned that "'for the [l]aw to define sex with one's nine to thirteen year-old daughter to be anything but intentional injury is ridiculous.'"  *Id.* at 482-83, 545 A.2d at 722 (quoting trial judge).  Alternatively, the court ruled that the case was

subject to an exception to the *Brohawn* rule for cases presenting "'unusual and compelling circumstances' justifying declaratory relief." *Id.* (citation omitted).

*Pettit*, 349 Md. 777, 709 A.2d 1287, followed some ten years after *Harpy*. In a "declaratory judgment action [brought by the insurer] concerning personal liability insurance coverage for a pedophile who was sued for sexual child abuse . . . . purportedly under several theories of negligence," the Maryland Court of Appeals held that "the exclusion for injuries expected or intended by the insured applies, despite the pedophile's subjective belief that his conduct caused no harm." *Id.* at 778-79, 709 A.2d at 1288.

In *Pettit*, the insured engaged in "fondling, undressing, masturbating, and performing oral sex" on two boys, who were seven and nine years old when the abuse began. *Pettit*, 349 Md. at 779, 709 A.2d at 1288. He also "encouraged and permitted others to molest the boys" and "videotaped these activities." *Id.* The tort plaintiff, who was mother and next friend of the victims, was also a defendant in the declaratory action. She acknowledged that the insured "intended to engage in the conduct constituting sexual acts and contacts," but argued that the insurance policy covered his conduct because the insured subjectively "believed that the sexual acts and contacts were not harmful to the children." *Id.* at 785, 709 A.2d at 1291. In rejecting this contention, the Maryland Court of Appeals approved the earlier decision of the intermediate appellate court in *Harpy*, *see id.* at 781-84, 709 A.2d at 1290-91, and stated: "[S]exual molestation is a tort which is only committed intentionally. There is no dichotomy between the 'damages' resulting from [the insured's] conduct and his intent to perform the acts of sexual child abuse." *Id.* at 786, 709 A.2d at 1292. Notably, the court also determined that declaratory relief in favor of an insurer is "appropriate prior to trial of the tort action where the allegations in

the underlying tort claims 'obviously constitute a patent attempt to recharacterize, as negligent, an act that is clearly intentional.'"   *Id.* at 780, 709 A.2d at 1289 (quoting *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 253, 572 A.2d 154, 157 (1990)).

Thereafter, in *Lititz Mutual Insurance Co. v. Bell*, 352 Md. 782, 724 A.2d 102 (1999), the Maryland Court of Appeals extended the logic of *Pettit* and *Harpy* to battery generally.   In that case, insurance coverage turned on whether a punch thrown by a psychiatric patient with "intermittent explosive disorder" could be characterized as negligent, or was intentional as a matter of law.   *See id.* at 783-91, 724 A.2d at 102-07.   Relying on a concession by the insured's counsel at oral argument that the insured intended to throw the punch, *id.* at 795-97, 724 A.2d at 108-10, the *Lititz* Court held that the alleged battery could not constitute negligence, and explained, *id.* at 798, 724 A.2d at 110 (internal citations omitted):

> [W]here the facts indicate a battery, the harm is the contact itself.   The acts of sexual molestation in *Pettit* were acts of battery, and the rationale of the decision is framed in the law of battery. . . .   If [the patient] had not intended the contact itself due to a mental condition, then the act might be considered an "accident" and not intentional because the contact (the harm) would have taken place without his foresight or expectation.   However, where the actor intends to cause an offensive contact, the legally recognized harm, *ipso facto*, cannot be said to have taken place without his foresight or expectation.

The Does attempt to distinguish this case from *Pettit* and *Harpy* because the acts of the alleged child abusers in those cases could not, under any circumstances, have been unintentional, whereas "the Does are able to present the court sworn testimony from Mr. Harrison that he never put his hands down [*i.e.*, inside] S. Doe's pants, and that the conduct in which he did engage (placing his hands on the front of S. Doe's pants) was merely accidental."   Does' Motion at 6.   Although the Does acknowledge that the Maryland courts in *Pettit* and *Harpy* held that there was no potentiality of coverage, despite the insureds' lack of intent to harm their victims, they insist

that, if Harrison's testimony were believed, a fact finder could conclude that his alleged abusive acts (and not merely the harms resulting from his acts) were accidental or unintentional.

In my view, the logic of *Harpy* and *Pettit* applies here; a jury could not construe Harrison's testimony so as to support a finding that his actions were negligent or "unintentional" in the sense of being involuntary, inadvertent, or accidental.  Harrison twice testified, under oath, that he touched S. Doe in "the front of his pants"; he never claimed that his conduct was an accident, that he had not known what part of S. Doe's body he was touching, or that his hand somehow had slipped in the course of otherwise innocuous horseplay.  Indeed, in his deposition testimony, Harrison expressly disclaimed the suggestion that he was "wrestling and somehow [his] hand got down . . . [S. Doe's] pants," ECF 25-3 at 58, and, in his testimony in the criminal case, Harrison acknowledged that his actions constituted "inappropriate sexual contact" and a "criminal act."  ECF 25-2, at 41.  At most, Harrison's testimony could support the conclusion that his actions were "unintentional" only in the sense that he acted impulsively, without rational consideration of the nature and consequences of his actions.

In any event, I need not invade the province of the fact finder in the Tort Suit or determine whether Count I of the Tort Complaint actually alleges an intentional tort, so as to preclude coverage under the Intentional or Criminal Acts Exclusion.  Even assuming, *arguendo*, that Harrison acted negligently, and that the Intentional or Criminal Acts Exclusion does not apply, the Tort Suit is clearly excluded from coverage by the Sexual Molestation Exclusion. Notably, the Does have failed to address the Sexual Molestation Exclusion, which, as indicated, excludes from coverage "sexual molestation, sexual harassment, corporal punishment, or physical or mental abuse by any insured."  Policy at 42.

Regardless of whether Harrison's alleged acts are characterized as "intentional" or "negligent," Harrison's sexual molestation of S. Doe is the gravamen of the Tort Complaint.  As Fireman's Fund points out, the Tort Complaint's first paragraph states: "This is a case involving the sexual molestation of a minor."  And, the Policy expressly bars coverage for acts of "sexual molestation."  Even if the *Pettit* Court said only in *dicta* that "sexual molestation is a tort which is only committed intentionally," 349 Md. at 786, 709 A.2d at 1292, and even if the circumstances here could be construed as "negligent sexual molestation," Harrison is not entitled to a defense in the Tort Suit because "sexual molestation" is unequivocally excluded from coverage under the Policy.

Fireman's Fund is entitled to judgment in its favor.  A Declaration and Order implementing this ruling follow.


Date:   December 29, 2011                    _____/s/_____
                                             Ellen Lipton Hollander
                                             United States District Judge